# EXHIBIT A

UNITED STATES OF AMERICA,    )  CR No. 07-594 PJH
    )
          Plaintiff,    )  DECLARATION OF
    v.    )  SHERYL EDWARDS
    )
JEFFREY HARRISON,    )
    )
          Defendant.    )
    )

---

I, Sheryl Edwards, declare the following to be true under pain of perjury:

1. I am a Customs and Border Protection (CBP) Officer assigned to the San Francisco International Airport (SFO). My duties include seizing of contraband and determining the admissibility of people to the United States and detecting and preventing terrorists and weapons of mass destruction from entering the United States, while facilitating the orderly flow of legitimate trade and travelers. I have received training and have experience in the enforcement of state, local and federal laws. I have served as a CBP Officer for 1 year and have been assigned to SFO for that time. In the course of my duties, I regularly inspect baggage and search for contraband.

2. On July 1, 2007, I was working in the secondary baggage inspection area and was assigned to conduct secondary inspections on passengers arriving from international destinations. In summary, secondary inspections are referrals in which a CBP Officer inspects a passenger's belongings and searches the belongings for contraband. During a secondary inspection, it is routine to inspect the passenger's passport and travel documents; ask questions of the passenger; enter the passenger's personal data into a computerized system; ask the passenger for confirmation that the belongings in his or her possession are his own; and thereafter inspect the passenger's belongings.

3. I first encountered the defendant, Jeffrey Harrison, on July 1, 2007. Mr. Harrison approached the counter where I was working in the secondary inspection area. Mr. Harrison appeared to be upset and agitated that he had been referred for secondary inspection and said that the referring CBP Officer "came out of nowhere."

4. While speaking with Mr. Harrison, he stated that he is the owner of a company called Global Mobile Technologies and that he was returning from a 10 day business trip in the Philippines. From my experience and training, I know that the Philippines is a known source of contraband child pornography and a common destination for child sex tourism. I also noticed that Mr. Harrison was traveling with a large amount of luggage in excess of what would be typical, in my experience, for a 10 day business trip.

5.    I am familiar with Mr. Harrison's Declaration in which he states that he told me that he was an attorney and that he described the nature of his business and legal work. Mr. Harrison never told me that he was an attorney and never described any legal work to me.

6.    After I entered data pertaining to Mr. Harrison into the computerized system, I asked him if all the belongings in his possession were his own. Mr. Harrison confirmed that items in his possession, including his laptop computer, were his own, which is referred to as a "binding declaration."

7.    While searching Mr. Harrison's belongings, I discovered a large number of CD-Rs, some of which were not labeled. Some of the CD-Rs were in loose plastic sleeves and were not contained in hard cover jewel cases. One of the CD-Rs, I noticed a questionable photocopy of a Microsoft logo and suspected that the CD-R may contain pirated software. Mr. Harrison said that the CD-Rs were business-related but did not say that the CD-Rs contained legal files or privileged material.

8.    Due to the large amount of baggage that Mr. Harrison had in his possession, I asked another CBP Officer, Officer Cross, for assistance in searching Mr. Harrison's belongings. I believed it was appropriate to review the CD-Rs and laptop discovered during the search of Mr. Harrison's belongings. Mr. Harrison was returning from a country of interest which is considered high risk for child sex tourism and child pornography, which can be transported on any type of computer media, including a CD-R. In addition, I had observed a suspect Microsoft label on one of the CD-Rs.

9.    After Officer Cross responded, I began to leave the secondary inspection area to take the CD-Rs into the CBP office to review the CD-Rs on the CBP computer. Mr. Harrison became agitated when I began to leave with the CD-Rs. He began to follow me and yelled "She's leaving with my stuff;" said that I could not review them without him being present; and tried to follow me. I recall one CBP Officer telling Mr. Harrison to relax and to stay in the area. Mr. Harrison's reaction to my leaving with his CD-Rs raised further suspicion in my mind. During this event, Mr. Harrison never stated that he was an attorney or that the CD-Rs contained attorney-client privileged files.

10.    I am familiar with Mr. Harrison's Declaration in which he states that he informed me that his computer contained confidential and attorney-client privileged legal files and that I could not search it. I am also familiar with Mr. Harrison's statement in his Declaration in which he said that I turned on his laptop computer; that I asked for his password; and that he refused to give me the password telling me that the computer contained privileged and confidential legal files that I could not search. I have no memory of Mr. Harrison ever making these statements and do not believe that he ever made these statements. I did not search Mr. Harrison's laptop and was not present when another CBP Officer, Officer Cross, searched Mr. Harrison's laptop.

11.    When reviewing computer storage media, I open the files on the media in a thumbnail

DECLARATION OF SHERYL EDWARDS, 07-0594 PJH

format that allows me to quickly view and identify the file. The thumbnail view displays a small version of the first page of the files on the CD-R. In viewing the thumbnails, I look for anything that is prohibited, including child pornography. If a file appears to contain contraband material, I more closely inspect the file by clicking on the thumbnail image and enlarge the image. I reviewed Mr. Harrison's CD-Rs in this manner. In my review of Mr. Harrison's CD-Rs, I discovered a number of images that appeared to be child pornography.

12. While searching the CD-Rs, I received a page to come out of the office and view an image on the laptop computer. I returned to the area where Officer Cross was searching the laptop computer and Officer Cross showed me a few contraband child pornography images. I recall Officer Cross asking me, at that time, if I knew that Mr. Harrison was an attorney. Thereafter, I took the laptop computer back into the CBP office.

EXECUTED THIS 7 DAY OF MARCH 2008.

OFFICER SHERYL EDWARDS

DECLARATION OF SHERYL EDWARDS, 07-0594 PJH